UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LAKE AIR SERVICE, LLC** | : | **DOCKET NO. 17-cv-681** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **KANSAS AVIATION OF INDEPENDENCE, LLC, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Dismiss [doc. 6] filed by defendant Kansas Aviation of Independence, LLC ("Kansas Aviation") pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiff Lake Air Service, LLC ("Lake Air") opposes the motion. Doc. 13.

This matter has been referred to the undersigned in accordance with 28 U.S.C. § 636. For reasons provided below, **IT IS RECOMMENDED** that the motion be **DENIED**. Lake Air's request for jurisdictional discovery should also be denied as moot.

**I.**
**BACKGROUND**

On May 3, 2017, Lake Air filed suit in the 31st Judicial District, Jefferson Davis Parish, Louisiana, against Kansas Aviation and its insurer. Doc. 1, att. 2. In the complaint Lake Air alleged that in January 2016, Kansas Aviation had overhauled the fuel control unit ("FCU") for the engine of an airplane owned by Lake Air, and thereafter issued an "Airworthiness Approval Tag," followed by a certification in February 2016 releasing the part to service. *Id.* at 3. Lake Air maintains that Kansas Aviation negligently performed this work, causing the engine to experience

a power surge during a flight leaving from Lake Arthur, Louisiana, on May 4, 2016, and resulting in damage to the engine. *Id.* at 3–5.

On May 27, 2017, Kansas Aviation removed the matter to this court under 28 U.S.C. § 1332. Doc. 1. It then filed the instant motion, alleging that this court lacked personal jurisdiction over Kansas Aviation in this matter and that the suit should therefore be dismissed without prejudice. Doc. 6.

## II.
### LEGAL STANDARDS

A party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists, and so the plaintiff carries the burden on the defendant's challenge to personal jurisdiction. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). However, the plaintiff is only required to make a *prima facie* showing and the court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavit, in favor of jurisdiction. *Id.*

Two preconditions must be satisfied before this court will assert personal jurisdiction: (1) the defendant must be amenable to service under the forum state's long-arm statute, and (2) the assertion of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). The Louisiana long-arm statute is coextensive with the limits of due process. *E.g.*, *Laird v. Deep Marine Technology, Inc.*, 2004 WL 2984282, *1 (E.D. La. Dec. 7, 2004). Therefore the requirements are combined for the purpose of this analysis. *Id.*

In order for personal jurisdiction to comport with constitutional standards of due process, the plaintiff must show that (1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) exercising jurisdiction over the defendant would not offend traditional notions of fair play and

substantial justice. *Jones*, 954 F.2d at 1068. The "minimum contacts" prong may be met through contacts giving rise to either general or specific jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). General jurisdiction arises where the defendant has "continuous and systematic contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S.Ct. 1868, 1872–73 (1984). Specific jurisdiction exists when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). In the case of specific jurisdiction, due process thus requires (1) minimum contacts purposefully directed at the forum state, (2) a nexus between the contacts and the claims, and (3) that the exercise of jurisdiction will be fair and reasonable (the second prong described above). *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009); *see also ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). In determining whether the "fair play" prong is met, the courts look to five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interest, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *McFadin*, 587 F.3d at 759–60.

### III.
### APPLICATION

Kansas Aviation maintains that there is no basis for an exercise of general or specific jurisdiction. Doc. 6, att. 1. Lake Air argues that there is a sufficient basis for specific jurisdiction, and requests that the court order jurisdictional discovery if it does not believe that a sufficient basis has yet been shown. Doc. 13. Kansas Aviation also opposes the request for jurisdictional discovery. Doc. 15.

It has long been held that when a defendant places its product in the stream of commerce with the knowledge that the product will be used in the forum state, this contact is enough to establish personal jurisdiction for litigation arising from that product. *World-Wide Volkswagen Corp. v. Woodson*, 100 S.Ct. 559, 567 (1980). The Fifth Circuit recently reaffirmed this principle, noting that it had "consistently followed a 'stream-of-commerce' approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court 'finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'"[1] *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)). However, the Fifth Circuit also emphasizes that a touchstone of minimum contacts review is "whether the defendant's conduct shows that it reasonably anticipates being haled into court" in the forum state. *McFadin v. Gerber*, 587 F.3d at 759 (internal quotations omitted). Accordingly, for the defendant's contacts to be a constitutionally sufficient basis for the exercise of personal jurisdiction, they "must be more than random, fortuitous, or attenuated, or . . . the unilateral activity of another party or third person." *Ainsworth*, 716 F.3d at 177 (internal quotations omitted).

Kansas Aviation relies on the sworn declaration of its president, Toby Lavine, who states that the entity is a limited liability company organized and located in Kansas, and conducting business "at only one facility, which is located at the Independence Municipal Airport." Doc. 6, att. 2, p. 3. He also states that Kansas Aviation maintains no presence in Louisiana, and that sales

---

[1] There is a split in the circuits, arising from *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Calif., Solano Cnty.*, 107 S.Ct. 1026 (1987). In her plurality opinion, Justice O'Connor wrote that an exercise of personal jurisdiction required more than the mere act of placing a product in the stream of commerce and that the plaintiff must instead show some action by the defendant "*purposefully directed toward the forum state*." 107 S.Ct. at 1032 (emphasis in original). This view, known as "stream of commerce plus," is broader than the view currently held by the Fifth Circuit, which allows for "mere foreseeability" as a "constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce," subject to the limitations set forth above. *Ainsworth*, 716 F.3d at 177; *see also Marks v. Westwind Helicopters, Inc.*, 2016 WL 5724300, *5–*8 (W.D. La. Jan. 20, 2016) (describing the current state of stream of commerce/stream of commerce plus), *adopted by the district court*, 2016 WL 5793771 (W.D. La. Sep. 30, 2016).

to Louisiana customers amounted to less than three-tenths of one percent of the company's total revenue for 2016. *Id.* Specific to the fuel control unit at issue in this matter, Lavine states that the FCU was received on January 4, 2016, from Enemy Aircraft, LLC, an aviation repair facility located in Arkansas. *Id.* at 2. He maintains that Enemy Aircraft requested and paid for the overhaul of the FCU, that the overhauled FCU was shipped back to Enemy Aircraft, and that Kansas Aviation considered Enemy Aircraft to be its only customer regarding that order. *Id.* Finally, Lavine states that Kansas Aviation had no communications or shipping contacts with Louisiana in regard to this FCU. *Id.*

Lake Air offers the sworn declaration of Enemy Aircraft president Jay LeJeune, who was engaged by contract between Enemy Aircraft and Lake Air to perform regular service and maintenance on the airplane at issue in this suit. Doc. 13, att. 1, p. 2. LeJeune states that Enemy Aircraft does a substantial amount of business with Kansas Aviation, and that approximately twenty percent of Enemy Aircraft's business is either performed in Louisiana or upon aircraft based in Louisiana. *Id.* at 2–3. He maintains that Kansas Aviation is "well and truly familiar" with the nature of his business and "knows that a part sold or overhauled and returned by Kansas Aviation, LLC to Enemy Aircraft could be installed into an aircraft based in any one of a number of states, including specifically Louisiana." *Id.* at 4. He also states that a Kansas Aviation representative has visited his facility in Hot Springs, Arkansas. *Id.* at 3. Finally, he declares that Kansas Aviation serves the Louisiana market for overhauled component parts of the engine series at issue here, and that at least forty-percent of the engines he has repaired, overhauled, and/or serviced in Louisiana had component parts bearing a Kansas Aviation tag. *Id.*; *see* doc. 1, att. 2, p. 3 (describing engine).

In this matter the evidence is sufficient for us to find that Kansas Aviation delivered the FCU into the stream of commerce with the expectation that it would be used by a consumer in

Louisiana. As Kansas Aviation points out, its direct sales to Louisiana are insufficient to establish a nexus in the instant claim. *See Pitts v. Ford Motor Co.*, 127 F.Supp.3d 676, 686 (S.D. Miss. 2015) (finding no nexus between claims arising from vehicle purchased in Texas which was later involved in an accident in Mississippi, and defendant motor company's direct sales in Mississippi). However, Kansas Aviation's direct transaction with Enemy Aircraft over the allegedly defective fuel control unit satisfies this requirement.

Kansas Aviation did business specifically with Enemy Aircraft, an Arkansas company. Given the nature of the respective businesses and Kansas Aviation's familiarity with Enemy Aircraft, Kansas Aviation should have easily anticipated that some of the parts it received by mail from Enemy Aircraft and returned by mail after overhauling might come from aircraft in neighboring states to Enemy Aircraft's place of business in Arkansas, and that the parts would then be returned to those aircraft where they might in some manner give rise to litigation. Under these facts Enemy Aircraft's contract with Lake Air was not fortuitous or attenuated, nor was it the unilateral activity of a third person. Instead, it was an expected subsequent event in the stream of commerce under Kansas Aviation's business model and its direct transactions with Enemy Aircraft. Accordingly, Lake Air satisfies the minimum contacts prong.

As to the "fair play" prong, the parties advance scant arguments. However, we agree with Lake Air that the balance of interests weigh in favor of litigating this matter in the forum where plaintiff is located and the accident occurred. Furthermore, as the Supreme Court noted nearly forty years ago, "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," a development which only accelerates with time. *World-Wide Volkswagen*, 100 S.Ct. at 565 (quoting *McGee v. Int'l Life Ins. Co.*, 78 S.Ct. 199, 201 (1957)). Thus the second prong is likewise satisfied and Due

Process does not serve as a bar to this court's exercise of personal jurisdiction over Kansas Aviation.

## IV.
### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Motion to Dismiss [doc. 6] be **DENIED**. Having resolved this matter on the briefs and affidavits, we also recommend that Lake Air's request for jurisdictional discovery be denied as moot.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 4th day of October, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE