UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LAKE AIR SERVICE, LLC** | : | **DOCKET NO. 2:17-cv-0681** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **KANSAS AVIATION OF INDEPENDENCE, LLC** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 42] filed by third-party defendant Woodward, Inc. ("Woodward") under Federal Rule of Civil Procedure 12(b)(2) and relating to the third-party complaint filed against it by defendant/third-party plaintiff Kansas Aviation of Independence, LLC ("Kansas Aviation"). Kansas Aviation opposes the motion [doc. 46], which is now ripe for review.

### I.
### BACKGROUND

This action began on May 3, 2017, with a complaint filed by Lake Air Service, LLC ("Lake Air") in the 31st Judicial District, Jefferson Davis Parish, Louisiana, against Kansas Aviation and its insurer. Doc. 1, att. 2. Lake Air alleged that in January 2016, Kansas Aviation had overhauled the fuel control unit for the engine of Lake Air's airplane and issued an "Airworthiness Approval Tag," followed by a certification in February 2016 releasing the part to service. *Id.* at 3. Lake Air maintains that Kansas Aviation negligently performed this work, causing a power surge that damaged the engine during a flight leaving from Lake Arthur, Louisiana, on May 4, 2016. *Id.* at 3–5.

Kansas Aviation removed the matter to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. It then moved for dismissal of all claims under Rule 12(b)(2), asserting a lack of personal jurisdiction. Doc. 6. The court disagreed, finding sufficient minimum contacts under a stream of commerce theory between Kansas Aviation and this state, based on Kansas Aviation's contract to perform maintenance/overhaul on parts provided by Enemy Aircraft, LLC, an Arkansas aviation repair facility; and its work under that contract on the fuel control unit that is the subject of this action. Docs. 16, 19.

Lake Air amended its complaint on January 16, 2019, to add a claim against Kansas Aviation under the Louisiana Products Liability Act ("LPLA"), Louisiana Revised Statute § 9:2800.51 *et seq.* Doc. 34. Specifically, Lake Air asserts that Kansas Aviation's overhaul work on the fuel control unit renders it the manufacturer of that part under Louisiana law and that it is therefore liable for the part's allegedly dangerous condition. *Id.* Kansas Aviation then filed a third-party complaint against Woodward, Inc., a Delaware corporation with its principal place of business in Fort Collins, Colorado. Doc. 36; *see* doc. 42, att. 3 (correcting principal place of business). Kansas Aviation alleges that (1) Woodward is the manufacturer of the fuel control unit and its component parts, (2) its own work on the fuel control unit was strictly limited to overhauling that part in accordance with Woodward's guidelines, and (3) it (Kansas Aviation) is therefore entitled to indemnity from Woodward based on any finding of fault under the LPLA. *Id.*

Woodward now moves to dismiss this claim for lack of personal jurisdiction. Doc. 42. Kansas Aviation opposes the motion, arguing that the court has specific personal jurisdiction over Woodward under the same stream of commerce theory used to support its jurisdiction over Kansas Aviation in the previous motion. Doc. 46.

## II.
## LEGAL STANDARDS

A party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists, and so the plaintiff carries the burden on the defendant's challenge to personal jurisdiction. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). However, the plaintiff is only required to make a *prima facie* showing and the court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavit, in favor of jurisdiction. *Id.*

Two conditions must be satisfied before this court will assert personal jurisdiction: (1) the defendant must be amenable to service under the forum state's long-arm statute, and (2) the assertion of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). The Louisiana long-arm statute is coextensive with the limits of due process. *E.g., Laird v. Deep Marine Technology, Inc.*, 2004 WL 2984282, *1 (E.D. La. Dec. 7, 2004). Therefore the requirements are combined for the purpose of this analysis. *Id.*

In order for personal jurisdiction to comport with constitutional standards of due process, the plaintiff must show that (1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) exercising jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice. *Jones*, 954 F.2d at 1068. The "minimum contacts" prong may be met through contacts giving rise to either general or specific jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). Specific jurisdiction, which is asserted here, exists when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel*

*& Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). Due process thus requires (1) minimum contacts purposefully directed at the forum state, (2) a nexus between the contacts and the claims, and (3) that the exercise of jurisdiction will be fair and reasonable (the second prong described above). *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009); *see also ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012).

It is the plaintiff's burden to satisfy the first two prongs, with the burden then shifting to the movant to show that an exercise of jurisdiction would be unfair or unreasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). To determine whether the "fair play" prong is met, the courts look to five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interest, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *McFadin*, 587 F.3d at 759–60. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008) (cleaned up).

### III.
### APPLICATION

The Fifth Circuit has "consistently followed a 'stream-of-commerce' approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court 'finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'"[1] *Ainsworth v. Moffett Eng'g, Ltd.*, 716

---

[1] There is a split in the circuits over this theory, arising from *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Calif., Solano Cnty.*, 480 U.S. 102 (1987). In her plurality opinion, Justice O'Connor wrote that an exercise of personal jurisdiction required more than the mere act of placing a product in the stream of commerce and that the plaintiff must instead show some action by the defendant "*purposefully directed toward the forum state.*" 480 U.S. at 112 (emphasis in original). This view, known as "stream of commerce plus," is broader than the view currently held by the Fifth Circuit and derived from Justice Brennan's concurrence. Under the Fifth Circuit's view, "mere foreseeability" provides a "constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce," so long as the contacts are more than "random, fortuitous, or

-4-

F.3d 174, 177 (5th Cir. 2013) (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)). A touchstone of minimum contacts review is "whether the defendant's conduct shows that it reasonably anticipates being haled into court" in the forum state. *McFadin*, 587 F.3d at 759 (internal quotations omitted). Accordingly, for the defendant's contacts to be a constitutionally sufficient basis for the exercise of personal jurisdiction, they "must be more than random, fortuitous, or attenuated, or . . . the unilateral activity of another party or third person." *Ainsworth*, 716 F.3d at 177 (internal quotations omitted).

In support of its motion Woodward shows that its principal place of business is in Colorado and that it is incorporated under Delaware law. Doc. 42, att. 3. It does not maintain any offices or facilities in Louisiana, nor does it have any employees based in this state. *Id.* The fuel control unit that gives rise to this suit was designed and manufactured by Woodward in Illinois in 1994, then sold and shipped to Pratt & Whitney Canada in Quebec that year. Doc. 42, att. 2, ¶ 7. Woodward did not ship the part to Louisiana or service it in that state. *Id.* at ¶ 8.

As Kansas Aviation shows, however, Woodward markets itself as maintaining a "global presence" with offices in, *inter alia*, Colorado, California, Florida, Illinois, Michigan, Ohio, and South Carolina, as well as multiple Asian and European offices. Doc. 46, att. 3. It advertises that its customers include equipment manufacturers as well as end users of their products. Doc. 46, att. 2. It also advertises that it serves the aerospace and industrial markets with "multiple business groups," including Governor Control Systems, Inc. ("GCS"). Doc. 46, atts. 5 & 6. GCS is a "factory authorized Woodward systems integrator and service/repair facility" with headquarters in

---

attenuated, or . . . [resulting from] the unilateral activity of another party or third person." *Ainsworth*, 716 F.3d at 177; *see also Marks v. Westwind Helicopters, Inc.*, 2016 WL 5724300, *5–*8 (W.D. La. Jan. 20, 2016) (describing the current state of stream of commerce/stream of commerce plus), *report and recommendation adopted*, 2016 WL 5793771 (W.D. La. Sep. 30, 2016).

Mandeville, Louisiana. Doc. 46, att. 6. It provides repair services and replacement parts, and lists "Fuel Controls" among its many products. *Id.*

Kansas Aviation is licensed by Woodward to provide repair services for Woodward-manufactured airplane parts, including fuel control units. Doc. 46, att. 8, ¶ 6. Woodward has pursued this aftermarket line of business and sought to expand it by licensing additional repair facilities. *See id.* at ¶¶ 8–9. Kansas Aviation frequently overhauls fuel control units manufactured by Woodward, through a process that includes purchasing new fuel control unit parts from Woodward. *Id.* at ¶ 7. Furthermore, Louisiana "has a high concentration of aircrafts being used as agricultural sprayers, a large number of which have Pratt & Whitney Canada engines with fuel control units manufactured by Woodward." Doc. 46, p. 8; *see* doc. 46, att. 8, ¶ 11. Kansas Aviation maintains, and Woodward fails to refute, that based on its own business dealings with Woodward as well as "Woodward's knowledge of market information critical for its business throughout the United States," Woodward would have known that (1) Kansas Aviation was not the end user for the fuel control unit or component parts that it (Kansas Aviation) purchased and (2) there was a reasonable likelihood that the parts it sold to Kansas Aviation would end up in aircraft in Louisiana. Doc. 46, pp. 7–9.

Woodward argues that these activities are too generalized to support a finding of specific jurisdiction. Doc. 49. Instead, it maintains, the motion to dismiss must be granted unless Kansas Aviation can show that its claim arises from Woodward's limited activities in Louisiana. Under its relaxed application of stream of commerce theory, however, the Fifth Circuit only requires foreseeability to "convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Luv N' Care*, 438 F.3d at 470; *see also In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 779 (5th Cir. 2018) (same).

Here, as the court found under Kansas Aviation's motion to dismiss, Woodward knew or should have known that end-market or after-market users of its products exist in Louisiana. Furthermore, it targeted that market by maintaining a business group with an office in Metairie, Louisiana. Even though the alleged product failure giving rise to this suit did not arise from Woodward's actual contacts with Louisiana, Kansas Aviation shows that those contacts, along with Woodward's attempts to avail itself of end-market and after-market customers across the country through a nationwide business model and the licensing of repair facilities like Kansas Aviation, created the foreseeability of the fuel control unit's presence in the state and support a finding specific jurisdiction under a stream of commerce theory. With the foreseeability of being haled into court in Louisiana established through these minimum contacts, Woodward fails to show that an exercise of personal jurisdiction by the court would be unfair or unreasonable. Accordingly, there is no basis for granting the motion.

## IV.
### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 42] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers this _11_ day of _July_, 2019.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**